G. WALLACE NEWTON AND NEWTON INSTRUMENT COMPANY, INC. v. UNITED STATES FIRE INSURANCE COMPANY, A CORPORATION AND NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION

No. 8914SC959

(Filed 5 June 1990)

1. **Insurance § 149 (NCI3d) — liability insurance — primary insurer bankrupt — Insurance Guaranty Association — umbrella insurer not primary insurer**

Where plaintiffs' primary liability insurer in an amount of $500,000.00 was declared bankrupt after an injury to a third party, the N.C. Insurance Guaranty Association became plaintiffs' insurer in the amount of $300,000.00, and plaintiffs also had an umbrella policy with a second insurer at the time of the injury, the umbrella policy did not "drop down" and become the primary liability coverage for a $185,000.00 claim by the injured third party because, under the terms of the umbrella policy, the second insurer was not obligated to cover any claim

against plaintiffs unless the claim was greater than $500,000.00 regardless of whether that $500,000.00 was "collectible."

Am Jur 2d, Insurance § 103.

2. **Master and Servant § 89.1 (NCI3d) — injury to worker — willful negligence by co-employee — common law liability — genuine issue of fact**

A genuine issue of material fact existed as to whether alleged actions by an injured worker's co-employee amounted to willful, wanton and reckless negligence so as to subject the co-employee to common law liability to the injured worker.

Am Jur 2d, Master and Servant §§ 398, 399; Workmen's Compensation §§ 67, 330, 331.

3. **Insurance § 149 (NCI3d) — employee's claim against co-employee — employer's liability insurance — policy exclusions**

An injured worker's claim against a co-employee individually was not excluded from coverage under the employer's liability policy by a provision excluding coverage for an obligation for which the insured may be held liable under the workers' compensation law since the co-employee was not individually liable to the injured worker under the Workers' Compensation Act. However, there was an issue of fact as to whether the employer assumed liability for the employee's injuries in a contract with a temporary employment service so that a policy exclusion for bodily injury to an employee arising out of and in the course of the employment would not apply.

Am Jur 2d, Master and Servant §§ 398, 399; Workmen's Compensation §§ 67, 330, 331.

4. **Master and Servant § 89.1 (NCI3d) — willful negligence by co-employee — vicarious liability of employer — Workers' Compensation Act as exclusive remedy**

The Workers' Compensation Act was an employee's exclusive remedy against the employer based on vicarious liability for the willful, wanton and reckless negligence of a co-employee.

Am Jur 2d, Master and Servant §§ 398, 399; Workmen's Compensation §§ 67, 330, 331.

NEWTON v. UNITED STATES FIRE INS. CO.

[98 N.C. App. 619 (1990)]

APPEAL by plaintiffs and defendant United States Fire Insurance Company from order entered 14 April 1989 and by plaintiffs from order entered 7 July 1989 by *Judge Howard E. Manning, Jr.* in DURHAM County Superior Court. Heard in the Court of Appeals 13 March 1990.

This is a declaratory judgment action. At issue is which of the defendants, if either, is liable for a previously settled claim against plaintiffs. The previously settled claim arose out of litigation between plaintiffs here and David Riley. Riley sued plaintiffs, alleging that he was injured on 2 May 1984 while working with a press brake on the premises of plaintiff Newton Instrument Company, Inc. (NIC). Riley alleged that his injuries were caused by the negligence of NIC and G. Wallace Newton (Newton). Riley's employment with NIC was arranged through Manpower Temporary Services.

On the date of the injury plaintiffs were insured against liability for bodily injury by Iowa National Insurance Company (Iowa National) in the amount of $500,000. Iowa National was declared bankrupt on 10 October 1985. Upon Iowa National's insolvency, under G.S. 58-48-35(a) (formerly G.S. 58-155.48) the North Carolina Insurance Guaranty Association (NCIGA) became plaintiffs' insurer in the amount of $300,000. NCIGA undertook the defense in the Riley litigation under a reservation of rights. On the date of the injury plaintiffs also had an "umbrella" policy with defendant United States Fire Insurance Company (U.S. Fire).

Plaintiffs demanded that NCIGA and U.S. Fire settle the Riley litigation. Defendants refused to settle on plaintiffs' behalf, each asserting that it did not provide liability insurance coverage to plaintiffs for the allegations contained in the Riley litigation. Additionally, NCIGA and U.S. Fire asserted that workers' compensation benefits were Riley's exclusive remedy. Notwithstanding the workers' compensation argument, plaintiffs, without the consent of NCIGA or U.S. Fire, settled the Riley litigation for $185,000.

Plaintiffs brought this suit to collect its settlement expenses and to determine the relative liabilities of the two insurance carriers. NCIGA answered and cross-claimed against U.S. Fire. NCIGA denied that the Riley litigation was a "covered claim" under the Insurance Guaranty Association Act, G.S. 58-48-1, *et seq.* (formerly G.S. 58-155.41, *et seq.*). Additionally, NCIGA cross-claimed against U.S. Fire, alleging that U.S. Fire had primary liability and that

NCIGA was entitled to reimbursement of defense costs incurred in the Riley litigation. U.S. Fire answered and denied liability. All parties moved for summary judgment on all claims.

In an order filed 14 April 1989 the trial court denied plaintiffs' motions; granted both defendants' motions as to NIC, finding that Riley was an employee of NIC at the time of his injury and therefore his injuries were covered by workers' compensation and expressly excluded from coverage by defendants' policies; denied U.S. Fire's motion as to Newton, finding that there was a genuine issue whether the claims in the Riley litigation were covered by U.S. Fire's policy; granted NCIGA's motion as to Newton; and, regarding the cross-claim, found that U.S. Fire's coverage "dropped down" when Iowa National became insolvent and U.S. Fire became the primary insurer. Therefore, the trial court held that if at trial U.S. Fire is deemed liable for Riley's claim against Newton, U.S. Fire must also reimburse NCIGA for defense costs incurred in the Riley litigation.

U.S. Fire appeals the disposition of the cross-claim summary judgment motions and the denial of its motion for summary judgment on the claims of Newton. Plaintiffs moved for alteration or amendment of the judgment under Rule 59(e), asking the court to strike the paragraph in the judgment that stated there was "no just reason for delay." Plaintiffs' motion was denied in an order entered 7 July 1989. Plaintiffs appeal the denial of their Rule 59(e) motion and the entries of summary judgment against them.

*Yates, Fleishman, McLamb & Weyher, by Joseph W. Yates, III and Bruce W. Berger, for plaintiff-appellants.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by William L. Stocks, for defendant-appellee/appellant United States Fire Insurance Company.*

*Moore & Van Allen, by Joseph W. Eason, Christopher J. Blake and Kelley Dixon Moye, for defendant-appellee North Carolina Insurance Guaranty Association.*

EAGLES, Judge.

This case involves appeals by three different parties. For the reasons stated below, we reverse the entry of summary judgment against U.S. Fire on NCIGA's cross-claim and remand for entry of summary judgment in favor of U.S. Fire. Therefore, NCIGA is the primary insurer for Riley's claims against NIC and Newton.

NEWTON v. UNITED STATES FIRE INS. CO.

[98 N.C. App. 619 (1990)]

Regarding plaintiffs' appeals, we affirm the entry of summary judgment in favor of NCIGA on the claims of NIC based on the exclusivity of the workers' compensation remedy but reverse the entry of summary judgment in favor of NCIGA on the claims of Newton.

### U.S. Fire Insurance Company's Appeal

[1] The question raised by U.S. Fire's appeal is whether the trial court erred in granting summary judgment in favor of NCIGA on its cross-claim against U.S. Fire. The trial court determined that the provisions of the U.S. Fire policy were ambiguous and that the contract must be construed in favor of the insured. Therefore, the trial court concluded that the U.S. Fire policy "dropped down" to become the primary insurer and, as between U.S Fire and NCIGA, U.S. Fire was the carrier primarily liable for the claims in the Riley litigation. Our review of the U.S. Fire policy leads us to the conclusion that U.S. Fire's coverage does not "drop down" and become primary coverage. Therefore, summary judgment in favor of NCIGA on the cross-claim was improper.

In North Carolina, it is well settled that when construing an insurance policy a court must enforce the policy as written, "without rewriting the contract or disregarding the express language used." *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). The U.S. Fire insurance policy provides that:

> The Company agrees to pay on behalf of the insured the ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract, for:
>
> (a) Bodily Injury Liability,
>
> * * *
>
> arising out of an occurrence.

The policy also provides that the "retained limit" is the greater of:

> (a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any other insurance collectible by the insured; or
>
> (b) the self-insured retention stated in Item 4(c) of the declarations as the result of all occurrences not covered by said underly-

ing insurance, and which shall be borne by the insured, separately as respects each annual period of this policy.

The policy provisions recited above are almost identical to the provisions involved in *Molina v. United States Fire Ins. Co.,* 574 F.2d 1176 (4th Cir. 1978). In *Molina* the court stated that

> [u]nder its policies U. S. Fire agreed to pay on [the insured's] behalf "the ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay," and the "retained limit" is defined as "the total of the applicable limits of the underlying policies listed in Schedule A."
> . . . . Clearly the obligation of U. S. Fire was to pay only the ultimate net loss in excess of the policy limits of the primary coverage of [the insolvent underlying carrier's] policies.

*Id.* at 1178.

NCIGA argues that because the word "collectible" is used in the definition of "retained limit," U.S. Fire's coverage should drop down to become primary coverage. We disagree. The word "collectible," as used in this policy, clearly modifies only the second part of subsection (a) in the definition of retained limit and applies only to insurance policies that are not listed in Schedule A of the policy. Plaintiffs' policy with Iowa National was listed in Schedule A and the applicable limit of that policy was $500,000. Under the terms of the contract, U.S. Fire was not obligated to cover any claim against plaintiffs unless the claim was greater than $500,000 regardless of whether that $500,000 was "collectible." We note the possibility of a "gap" in coverage that may occur when a primary carrier becomes insolvent since the statutory cap on NCIGA's liability here is $300,000. However, there is no "gap" here since Riley's claims amounted to $185,000.

NCIGA also argues there is significance in an amendatory endorsement in U.S. Fire's policy with plaintiffs. The endorsement replaced a provision that expressly addressed the liability of U.S. Fire in the event of the insolvency of an underlying insurer. The deleted provision stated that "[i]n the event there is no recovery available to the insured as a result of the bankruptcy or insolvency of the underlying Insurer, the coverage hereunder shall apply in excess of the applicable limit of liability specified in Schedule A." This particular provision was *not* a part of U.S. Fire's policy with plaintiffs. The provision was replaced with language that does not

expressly address U.S. Fire's obligations when an underlying insurer becomes insolvent. NCIGA argues that the change in this provision renders the the policy ambiguous on the "drop down" issue. We disagree. The record discloses that when the policy here was originally issued, it already included the amendatory endorsement. Therefore, the "original provision" that expressly addressed the liability of U.S. Fire on the insolvency of an underlying insurer was never part of plaintiffs' contract with U.S. Fire. Since there was no "change" in plaintiffs' policy with U.S. Fire, there is no ambiguity.

Based on the clear language of the contract U.S. Fire is not liable for claims against plaintiffs that are less than $500,000. The claim involved in this case was for $185,000. If either carrier is liable for the claims arising out of the Riley litigation, the carrier liable is NCIGA. Therefore, the trial court erred in granting summary judgment in favor of NCIGA on its cross-claim against U.S. Fire; U.S. Fire was entitled to summary judgment.

### Plaintiffs' Appeal

Because of our determination of the "drop down" issue, the remaining issue is whether the Riley litigation claims are covered by plaintiffs' policy with Iowa National and by the Insurance Guaranty Association Act. We find that the claims against NIC were not covered since Riley's exclusive remedy against NIC was under the Workers' Compensation Act. We also agree with the trial court that there are outstanding issues regarding Newton's personal liability. Newton would be personally liable to Riley only if Newton's conduct is found to be willful, wanton and reckless negligence. Additionally, we find there is an issue of fact whether the potential claims are excluded from coverage by the Iowa National policy. Therefore, we conclude that summary judgment in favor of NCIGA on Newton's claims was improperly granted.

(A) Claims against Newton.

[2] The issues involved here are whether the actions alleged in the Riley litigation subject Newton to common law liability and, if so, is that liability covered by the Iowa National policy and the Insurance Guaranty Association Act. The trial court concluded that "a disputed issue of material fact exists with respect to whether the claims against Newton were excluded from the coverages of the policies issued to [NIC]." We agree.

"[T]he Workers' Compensation Act does not shield a co-employee from common law liability for willful, wanton and reckless negligence." *Pleasant v. Johnson,* 312 N.C. 710, 716, 325 S.E.2d 244, 249 (1985). However, the Act is the exclusive remedy for an employee who is injured by the ordinary negligence of a co-employee. *Id.* at 713, 325 S.E.2d at 247. G.S. 97-2(2) defines "employee" as "every person engaged in an employment under any appointment or contract of hire . . . . [and e]very executive officer elected or appointed and empowered in accordance with the charter and bylaws of a corporation shall be considered as an employee of such corporation under this Article." Riley and Newton were co-employees under the Act.

There is an issue of fact whether the allegations contained in the Riley litigation amount to willful, wanton and reckless negligence. Additionally, whether the Iowa National policy and the Insurance Guaranty Association Act cover Riley's claims against Newton is in issue.

[3] NCIGA argues that because two exclusions from the policy apply, Riley's claims are not covered. The policy provides that:

This insurance does not apply:

* * *

(i) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured under an incidental contract[.]

NCIGA argues that paragraph (i) excludes Riley's claims against Newton from the policy's coverage. We disagree. Because they were co-employees Newton was not individually liable to Riley under the Workers' Compensation Act for the injuries Riley sustained.

NCIGA also asserts that paragraph (j) excludes Riley's claims against Newton from the policy's coverage. Newton argues that

NIC assumed liability for Riley's injuries in its contract with Manpower. After careful review of the record, we have determined there is an issue whether NIC assumed liability for Riley's injury in its contract with Manpower. Although the parties have asserted different arguments in regard to this contract, the contract is not in the record before us. Therefore, we cannot determine whether Newton's individual liability is insured by the Iowa National policy.

(B) Claims against NIC.

[4] Riley's claim against NIC was based solely on vicarious liability. NIC argues that this cause of action was recently suggested by our Supreme Court in *Abernathy v. Consolidated Freightways Corp.*, 321 N.C. 236, 362 S.E.2d 559 (1987). We disagree and affirm the entry of summary judgment in favor of defendants on the claims of NIC.

Plaintiff relies on language from *Abernathy* where the Court stated that "we find it unnecessary to decide, or even consider, whether an employer may be held vicariously liable in a civil action by one of its employees for the willful, wanton or reckless conduct of its other employees, arising out of and in the course of their employment." *Id.* at 241, 362 S.E.2d at 562. NIC asserts that the Supreme Court's use of this language suggests that the Court will consider an additional exception to the exclusivity of the Workers' Compensation Act with respect to vicarious liability of employers for the willful, wanton and reckless negligence of their employees. We disagree.

Our reading of *Abernathy* draws us to the conclusion that when the Supreme Court employed the language quoted above, the Court was simply disposing of all of the parties' arguments. The Court had determined that the employee's actions were merely negligent, as a matter of law, and that there was no basis for finding the employee had acted in a willful, wanton or recklessly negligent manner. Therefore, the Court was merely stating that since there was no basis for liability of the co-employee there was no reason to discuss the possibility of the employer's vicarious liability. We find no merit in NIC's argument and decline further to extend the established exceptions to the exclusivity of workers' compensation benefits.

For the reasons stated, we reverse the entry of summary judgment in favor of NCIGA on its cross-claim and remand for

STATE v. CINEMA BLUE OF CHARLOTTE

[98 N.C. App. 628 (1990)]

entry of summary judgment in favor of U.S. Fire. Additionally, we affirm the entry of summary judgment in favor of NCIGA against NIC. We reverse summary judgment in favor of NCIGA against Newton and remand for trial.

Affirmed in part, reversed in part and remanded.

Judges WELLS and GREENE concur.