Wordsworth v. Warren, 2018 NCBC 106.

STATE OF NORTH CAROLINA

COUNTY OF CUMBERLAND

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 4051

STEVE WORDSWORTH; PATRICK HARRIGAN; JOHN BIRK; WH OPTICS HOLDINGS, LLC; PRH HOLDINGS, LLC; and TACDRIVER, LLC,

Plaintiffs,

v.

DEVLYN DREW WARREN and ASCENDANT ADVISORY GROUP, LLC,

Defendants.

**ORDER ON DEFENDANTS' MOTION TO STAY**

THIS MATTER comes before the Court on Defendants Devlyn Drew Warren ("Warren") and Ascendant Advisory Group, LLC's ("Ascendant") Motion to Stay. ("Motion", ECF No. 13.) Defendants seek a stay of this action pursuant to N.C. Gen. Stat. § 1-75.12 (hereinafter the General Statutes are referred to as "G.S.") in favor of two prior-filed actions in Montana. Plaintiffs oppose the Motion. Both sides filed briefs and affidavits in support of their positions on the Motion, and the Court heard oral argument on the Motion at a hearing on Monday, October 8, 2018. The Motion is now ripe for disposition.

THE COURT, having considered the Motion, the briefs and evidentiary materials filed in support of and in opposition to the Motion, and other appropriate matters of record, concludes in its discretion that the Motion should be GRANTED for the reasons set forth below.

## I.  FACTUAL AND PROCEDURAL HISTORY[1]

This action arises out of a broken business relationship between Plaintiffs Steve Wordsworth ("Wordsworth"), Patrick Harrigan ("Harrigan"), and John Birk ("Birk"), on the one hand; and Defendant Warren, on the other.  Wordsworth is a member and manager of Plaintiff WH Optics Holdings, LLC ("WH").  Harrigan is a member and manager of WH, and sole owner and member of Plaintiff PRH Holdings, LLC ("PRH").  Birk is a member and manager of TacDriver, LLC ("TacDriver"). Harrigan and Birk are currently residents of North Carolina.

Warren is the chief executive officer, and a member and/or manager of Ascendant.  Warren contacted Plaintiffs in or around March 2017 proposing to form a limited liability company, Down Range Solutions Group LLC ("DRSG"), for the purpose of acquiring a California company called U.S. Optics, Inc. that builds custom riflescopes and optics for firearms ("U.S. Optics").  (Verif. Compl., ECF No. 4, at ¶¶ 24, 27–29, 31.)  In or around June, 2017, Wordsworth, Harrigan, and Birk, through their respective LLCs, purchased membership interests in DRSG.  Sometime between June and December 2017, DRSG acquired U.S. Optics.

Plaintiffs allege that, in the course of attempting to convince them to invest in DRSG, Warren made "targeted solicitations" to Wordsworth, Harrigan, and Birk that contained false statements including: statements that Kevin Peterson ("Peterson"), a potential chief operating officer for DRSG, was unwilling to move from Montana to

---

[1] As context for the Court's analysis, this section describes the allegations in the verified complaint.  The Court elects to make necessary findings of fact and conclusions of law at the end of this Opinion.

North Carolina, for the purpose of convincing the Plaintiffs to assent to relocation of DRSG's operations to Montana, (ECF No. 4, at ¶¶ 40–42); and statements that Warren had attempted, but failed, to obtain financing for the acquisition of U.S. Optics from eight different banks for the purpose of convincing Plaintiffs to invest their own finances in the purchase of membership in DRSG. (*Id.* at ¶¶ 44–49). Plaintiffs also allege that Warren failed to inform Plaintiffs of certain material facts regarding the purchase of U.S. Optics including: that Warren was representing both U.S. Optics and DRSG as broker and receiving commissions from both DRSG and from U.S. Optics for brokering the deal, and therefore had a conflict of interest (*Id.* at ¶¶ 67–71); and that Warren failed to disclose "critical information regarding deficiencies of U.S. Optics." (*Id.* at ¶¶ 72–74).

Plaintiffs filed the verified complaint in this action on June 4, 2018. (ECF No. 4.) The case was subsequently designated to the Business Court and assigned to the undersigned. In this lawsuit, Plaintiffs make claims against Warren for offering or selling securities through false statements or material omissions in violation of the North Carolina Securities Act (NCSA), G.S. § 78A-56(a)(2), unlawful solicitation of unregistered securities in violation of G.S. § 78A-24, unlawful business transactions as an unregistered dealer in violation of G.S. § 78A-36, and for common law fraud.

The parties in this lawsuit are also parties to two separate lawsuits previously filed in Montana. The first suit was filed by Warren on March 28, 2018 and is styled *300 Holdings, LLC, and Devlyn D. Warren v. Down Range Solutions Group, LLC, Tacdriver, LLC, John Birk, WH Optics Holdings, LLC, Steve Wordsworth, PRH*

*Holdings, LLC, and Pat Harrigan*, Cause No. DV-18-312D (the "Warren Montana Action"). (Warren Montana Action Compl., ECF No. 16.1.) The Warren Montana Action is based on Plaintiffs' ouster of Warren from his management position with DRSG, and alleges claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, constructive fraud, and valuation of Warren's interest, and dissolution.

Plaintiffs, as defendants in the Warren Montana Action, filed counterclaims for violation of the Montana Limited Liability Company Act, breaches of duties of loyalty, care, and good faith, and fraud. Plaintiffs allege in the counterclaims that Warren made various misrepresentations and omissions to Plaintiffs. (Warren Action Countercl., ECF No. 16.2.) Specifically, Plaintiffs allege that Warren misrepresented that Peterson would not relocate to North Carolina, and that Warren failed to disclose that he and Ascendant received a broker's commission from U.S. Optics. (*Id*. at ¶¶ 10, 20.) However, it is not clear whether these representations were made before or after Plaintiffs invested in DRSG. In the Warren Montana Action, the Plaintiffs do not allege violation of Montana securities laws or the NCSA.

The second suit filed in Montana was filed by DRSG[2] on May 11, 2018 and is styled *Down Range Solutions Group, LLC v. Ascendant Advisory Group, LLC, and Devlyn Warren*, Cause No. DV-18-509C (the "DRSG Montana Action"; collectively, the Warren Montana Action and the DRSG Montana Actions are referred to as the "Montana Actions"). (DRSG Montana Action Compl., ECF No. 16.4.) The DRSG

---

[2] It is undisputed that Plaintiffs, acting as the management of DRSG after removing Warren, caused the DRSG Montana Action to be filed by DRSG.

Montana Action alleges, *inter alia*, that: (1) Warren and Ascendant misrepresented that Warren had been unable to secure financing from eight banks as a means of convincing Plaintiffs to finance the purchase of U.S. Optics with their own money (*Id.* at ¶¶ 10–14, 19–21); (2) Warren failed to disclose that he was acting as broker for, and would receive a commission from, U.S. Optics (*Id.* at ¶¶ 15–16); and (3) Warren failed to disclose to DRSG material facts related to the acquisition of U.S. Optics. (*Id.* at ¶¶ 17–18.) The DRSG Montana Action alleges claims against Warren and Ascendant for breach of contract, fraud, and negligence. (*Id.*)

The Warren Montana Action currently is set for trial in November 2019. (Harrigan Aff., ECF No. 23, at ¶ 13, Ex. B.) The Montana Actions are in the early stages of discovery, with written discovery having been exchanged but no depositions yet taken. (*Id.* at ¶¶ 10, 12.)

Defendants contend that this lawsuit should be stayed in favor of the Montana Actions because the alleged misrepresentations or material omissions attributed to Warren in this lawsuit are subsumed by factual allegations and legal claims in the Warren Montana Action and/or the DRSG Montana Action. (ECF No. 13, at p. 1; Def. Br. Supp. Mot. to Stay, ECF No. 14, at pp. 2–3.) Defendants argue that Montana is a "fair, convenient, and proper forum for the parties to resolve their disputes." (ECF No. 14, at p. 3.) Defendants further argue that it would be a substantial injustice to require Warren to litigate this lawsuit when the same issues are being litigated in the Montana Actions, particularly when both Warren and Plaintiffs have already chosen to file claims in Montana. (*Id.* at p. 4.) Finally, Defendants assert that

simultaneously litigating the Montana Actions and this lawsuit will be an inefficient use of judicial resources. (*Id*.)

In response, Plaintiffs argue that the allegations in this action are narrowly focused on misrepresentations and omissions that Warren made prior to the formation of DRSG, and that the Montana Actions are more broadly focused on Warren's alleged actions and omissions as manager of DRSG after DRSG was formed. (Pl. Br. Opp. Mot. Stay, ECF No. 22, at pp. 1–2.) In addition, Plaintiffs contend that their claims in this lawsuit are primarily for violations of the NCSA, and the NCSA claims are not raised in either of the Montana lawsuits. Plaintiffs further argue that there would be no substantial injustice from allowing this action to proceed because this case involved only claims under the NCSA. (*Id*.)

## II. ANALYSIS

"If, in any action pending in any court of this State, the judge shall find that it would work substantial injustice for the action to be tried in a court of this State, the judge on motion of any party may enter an order to stay further proceedings in the action in this State." G.S. § 1-75.12(a). The determination as to whether to stay an action filed in this State is in the Court's sound discretion. *Home Indem. Co. v. Hoechst Celanese Corp.*, 99 N.C. App. 322, 325, 393 S.E.2d 118, 120 (1990); *La Mack v. Obeid*, 2015 NCBC LEXIS 24, at * 15 (N.C. Super. Ct. Mar. 5, 2015).

North Carolina courts consider ten factors in determining whether substantial injustice would result from an action proceeding in a court of this State. *E.g., Lawyers Mut. Liab. Ins. Co. v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 356, 435

S.E.2d 571, 573 (2993); *Muter v. Muter*, 203 N.C. App. 129, 132, 689 S.E.2d 924, 927 (2010); *Surs. Grp., Inc. v. Int'l Fid. Ins. Co.*, 244 N.C. App. 439, 458, 785 S.E.2d 96, 107 (2015). The ten factors are:

> (1) the nature of the case, (2) the convenience of the witnesses, (3) the availability of compulsory process to produce witnesses, (4) the relative ease of access to sources of proof, (5) the applicable law, (6) the burden of litigating matters not of local concern, (7) the desirability of litigating matters of local concern in local courts, (8) convenience and access to another form, (9) choice of forum by plaintiff, and (10) all other practical considerations.

*Muter*, 203 N.C. App. at 132, 689 S.E.2d at 927 (quoting *Lawyers Mut. Liab. Ins. Co.*).

"[I]t is not necessary that the trial court find that all factors positively support a stay, as long as it is able to conclude that (1) a substantial injustice would result if the trial court denied the stay, (2) the stay is warranted by those factors present, and (3) the alternative forum is convenient, reasonable, and fair." *Lawyers Mut. Liab. Ins. Co.*, 112 N.C. App. at 357, 435 S.E.2d at 574. "The ultimate question is whether the particular factors of this particular case lead to the reasoned conclusion that there exists a reasonable, convenient, and fair forum, resort to which would avoid a substantial injustice that would otherwise occur." *Paramount Rx, Inc. v. Duggan*, 2015 NCBC LEXIS 32, at *9–10 (N.C. Super. Ct. Mar. 27, 2015) (citing *Wachovia Bank N.A., v. Harbinger Capital Partners Master Fund I, Ltd.*, 201 N.C. App. 507, 520, 687 S.E.2d 487, 495 (2009)).

Both Plaintiffs and Defendants argue the application of the ten factors in support of their positions. (ECF No. 14, at p. 4; ECF No. 22, at p. 7.) The Court will analyze the factors relevant to this case, weighing them in its discretion. *Lawyers*

*Mut.*, 112 N.C. App. at 357, 435 S.E.2d at 573–74 (citing *Motor Inn Mgmt. Inc. v. Irvin-Fuller Dev. Co.*, 46 N.C. App. 707, 713, 266 S.E.2d 368, 371 (1980)).

Preliminarily, the Court finds that there are significant issues of fact common to the Montana Actions and this lawsuit. As discussed above, Plaintiffs have alleged the same misrepresentations by Warren in the Montana Actions that they allege in this lawsuit. Plaintiffs allege that Warren's misrepresentations were fraudulent in both Montana Actions and in this lawsuit. While Plaintiffs have not made claims under the NCSA in the Montana Actions, they have not argued that they would be prevented from raising such claims in that forum. The Court concludes that the "nature" of this case is substantially similar to the Montana Actions, and the first factor favors Defendants.

A plaintiff's choice of forum is typically given significant weight in the Court's determination of whether denying a motion to stay would cause the non-movant to suffer a substantial injustice. *Paramount Rx, Inc. v. Duggan*, 2015 NCBC LEXIS 32, at \*11 (N.C. Super. Ct. March 27, 2015) (citing *Firstar Bank, N.A. v. Interlease 757 Aircraft Investors, LLC*, No. 1:01CV706, 2002 U.S. Dist. LEXIS 20974, at \*10 (M.D.N.C. Aug. 23, 2002) and *La Mack*, 2015 NCBC LEXIS 24, at \*16–17.) Plaintiffs' choice of forum, however, does not weigh heavily in favor of Plaintiffs' position in this instance. Prior to filing this lawsuit, Plaintiffs first chose to sue Defendants in Montana derivatively through DRSG, in the DRSG Montana Action, based on the same misrepresentations alleged in this lawsuit. Plaintiffs also did not challenge the jurisdiction of the Montana state court in the Warren Montana Action; rather, they

filed counterclaims based, in part, on the misrepresentations alleged in this lawsuit. *See Paramount Rx*, 2015 NCBC LEXIS 32, at *11–12 (granting defendants motion to stay North Carolina lawsuit alleging defamation where plaintiff's president raised counterclaims based on some of the same defamatory statements in prior New York lawsuit filed by defendants). Effectively, Plaintiffs twice chose Montana as an appropriate forum prior to filing this lawsuit in North Carolina.

For similar reasons, the Court finds unpersuasive Plaintiffs' argument that North Carolina is a more convenient forum for the witnesses because all Plaintiffs reside in North Carolina. Plaintiffs have not identified any specific non-party North Carolina residents whom they claim will be necessary witnesses in this lawsuit. In this setting, where Plaintiffs are already litigating the alleged misrepresentations in Montana, the Court concludes that it need not give significant weight to Plaintiffs' choice of North Carolina as the forum for this case.

The ease of access to sources of proof is not a factor that significantly favors either side. Plaintiffs and Defendants conceded at the hearing that the critical evidence regarding Warren's alleged misrepresentations will be primarily in the form of emails and other electronically stored documentation. Such information can generally be accessed remotely regardless of its physical storage location. To the extent Ascendant's or DRSG's hard copy files are needed, they are located in Montana.

The Court also must assess the practical considerations of granting or denying the Motion. Although apparently at an early stage, discovery is underway in the

Montana Actions and at least some written discovery has been conducted. The Court has not yet entered a case management order in this case, and the parties have not commenced discovery. The discovery already being conducted in the Montana actions regarding Warren's alleged misrepresentations could obviate the need for certain discovery to be conducted in this case. In addition, summary judgment motions must be filed in the Warren Montana Action by February 8, 2019, and trial has been set to begin on November 12, 2019. Under that schedule, at least the Warren Montana Action will be decided before this lawsuit is likely to conclude. There also is the possibility that decisions in the Montana Actions, if concluded before this lawsuit, will have a collateral estoppel effect on factual or legal issues raised here. The Court concludes that staying this lawsuit and permitting the Montana Actions to proceed is likely to narrow issues in this lawsuit. The practical considerations strongly favor the issuance of a stay.

The Court notes that the factors regarding applicable law, the desirability of litigating local issues in a local court, and the burden of litigating non-local matters appear to fall in Plaintiffs' favor. The claims in this action are raised exclusively under North Carolina law, and Plaintiffs have raised issues of local concern; namely, whether Warren solicited Plaintiffs to purchase securities by means of fraudulent misrepresentations or omissions. While these factors favor Plaintiffs, the Court does not find them dispositive when compared against the more decisive factors in these circumstances of the nature of the case, Plaintiffs' prior choice of Montana as an appropriate forum, and practical considerations.

It is clear that the question of whether this matter should be stayed pursuant to G.S. § 1-75.12 is a very close one. Nevertheless, after considering the factors relevant to its determination, the Court finds in its sound discretion that the overlap between the factual, and to some extent legal, issues involved in this case and the Montana Actions combined with the practical considerations predominate over the other factors in this case. In addition, the Court concludes that Montana is a reasonable, convenient, and fair forum for the parties to litigate the issues, and that it would be substantially unjust to require Defendants to proceed with this lawsuit at this time. *Lawyers Mut. Liab. Ins. Co.*, 112 N.C. App. at 357, 435 S.E.2d at 574. For those reasons, the Court concludes in the exercise of its discretion that Defendants' Motion to Stay should be GRANTED to permit the Montana Actions to proceed.

THEREFORE, IT IS ORDERED that the Motion to Stay is GRANTED, and this action is STAYED until further order of this Court.

IT IS FURTHER ORDERED that the parties shall jointly submit to the Court, via email to the assigned law clerk, within sixty (60) days of entry of this Order, and every 60 days thereafter, a short summary of the progress of the Montana Actions until further order of this Court.

SO ORDERED, this the 15th day of October, 2018.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases